27 C.C.P.A. (Patents)

## In re FLEMING.

### Patent Appeal No. 4249.

Court of Customs and Patent Appeals. Feb. 26, 1940.

Everett N. Curtis, of San Diego, Cal., and Ralph L. Stevens, of Washington, D. C., for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, for lack of patentability in view of the cited prior art, claims 2, 3, 4, 13 and 14 of appellant's application for a patent. No claims were allowed. Claims 2, 3 and 4 are for a process, and claims 13 and 14 are method claims.

Claims 2, 3, and 14 are illustrative and read as follows:

"2. A method of blending flour, consisting of roasting at cooking temperatures cereal grains, in roasting coordinating thereto at cooking temperatures separate from said grains sesame seed in quantity not greater than one part of such seed to four parts of said grains, in mixing said seed and grains, and thereafter grinding said mixture to the form of flour."

"3. A method of blending flour, consisting in roasting sesame seed to a golden brown in appearance, in roasting separate from said seed cereal grains to a golden brown appearance, in thoroughly mixing said seed and grains and thereafter grinding said mixture to the form of flour."

"14. A flour comprising a pulverized mixture of roasted seeds of golden brown appearance, said seeds consisting of one part of sesame seed to approximately four or more parts of cereal grains."

The references relied upon are:
Colgate, 38,033, March 31, 1863.
Waitt, 128,342, June 25, 1872.
Stukes, 1,258,059, March 5, 1918.
Lai, 1,470,929, October 16, 1923.

The claimed invention is sufficiently described in the above quoted claims.

The patent to Colgate discloses the admixture of kiln dried starch with wheat before grinding, and then grinding the mixture.

The patent to Waitt relates to a method of preparing wheat and other cereals for food. The patent states:

" * * * my invention consists in subjecting the ripe grain, either in the berry or kernel, or more or less comminuted, to such torrefication as shall convert more or less of the starch into dextrine, and render the hull friable, so that after grinding or comminuting shall break or pulverize the whole mass equally, thereby fitting the grain without waste, to be easily formed into flour, meal, grits, or cracked wheat.

"The process of torrefication can be most conveniently conducted while the grain is in the kernel, in a suitable rotating cylinder, the degree of heat required being from 280° to 300° Fahrenheit."

The patent to Stukes relates to a composition of matter consisting of a toasted mixture of corn, wheat, and other edible seeds reduced to a finely comminuted state and combined with sugar and a flavoring substance. The patent states: "After the ingredients have been mixed they are toasted or parched in an edible oil such as olive oil, peanut oil, etc., the toasting being similar to that carried on in the production of potato chips. After the mixture has been thoroughly toasted it is ground to a fine powder and sifted. To this powdered mixture is added from ten to twenty-five per cent. of sugar, the mixture being salted and then flavored with powdered cinnamon, cloves, nutmeg or the like. It is subsequently packed and disposed of to the trade in this powdered form."

The patent to Lai relates to sesame flour and a process of making the same. The patent states:

"In carrying out the present invention a quantity of sesame or gheemaar seed is placed in a suitable container or heating apparatus which may preferably be in the form of a mixer of any preferred construction, and the seed is then subjected to heat. The seed is preferably raised to the desired temperature in order to accomplish the cooking operation by gradually raising the temperature, and I have found in practice that a temperature of about 200° F. is satisfactory. The seed is preferably cooked in this manner in a substantially closed container so as to retain substantially the entire flavor and aroma, and of course it is understood that the seeds are mixed or stirred during the heating process.

"After the seed has been heated or cooked to the proper extent, the same is permitted to cool slowly in a closed receptacle so as to retain substantially all the flavor and aroma of the seed. Thereafter the cooked seed is preferably ground or milled so as to produce a flour. * * *"

As hereinbefore indicated, the patent to Waitt teaches the roasting of cereal grains before grinding. The patent to Lai teaches the roasting of sesame seed before grinding. The patent to Stukes teaches the toasting of corn, wheat, and edible seeds, not separately but together, and then grinding the mixture. None of the references disclose the separate roasting of sesame seed, or other seeds, and other cereals, then mixing and grinding them.

The Board of Appeals in its decision stated:

"The patent to Stukes shows it old [to] produce a flour of toasted seeds which, after toasting, are ground together. This patent discloses the necessity of thorough roasting to facilitate the grinding but does not teach that any of the ingredients are to be separately toasted. Moreover, the particular mix employed by Stukes does not include sesame seed.

"However, appellant is not the first to propose the use of cooked seed of this material in the making of flour, as shown by the patent to Lai. In view of Lai's teachings, there clearly would be no invention in adding the sesame seed to the mix of Stukes. While this would not involve a separate toasting of the sesame seed, it seems to us that one skilled in the art and attempting to produce a blended flour, including such material, would naturally resort to this expedient if it should be found that in attempting to toast all of the ingredients together, some of them were toasted too much or too little. In the appeal the degree of toasting employed by appellant, as compared with that taught by the Lai patent, is much stressed.

"We are not satisfied that the application of more heat to the sesame seeds than is taught by the Lai patent involved invention. In attempting to produce flour from cooked seeds of this variety, one would naturally experiment and try different degrees of cooking in arriving at the best condition for subsequent grinding and the desired final product.

"The patent to Colgate, like the patent to Stukes, teaches that a thorough mixing may be obtained by grinding the constituents together."

Appellant contends that the important steps in his process are not disclosed or suggested by the cited prior art, the steps being set forth as follows in his brief:

"1. Separate roasting of the ingredients.

"2. Degrees of temperature and periods of time necessary to roast the ingredients to a golden brown and to bring out latent flavors and aroma that are only released through the roasting process.

"3. Combining and blending the ingredients in proportions prior to grinding."

It is appellant's further contention that none of the references, singly or combined, suggest the product claimed by him.

We will first consider the question of separate roasting of the ingredients before mixing and grinding them. While this is not shown by the references it was held by the Patent Office tribunals that it would be obvious to one skilled in the art that if it is desired to mix and grind toasted cereal grains and sesame seed there should be separate roasting of the sesame seed and cereal grains. Appellant's counsel in his brief states: " * * * It is obvious, therefore, that all the ingredients could not be roasted together at a temperature of 400 degrees Fahrenheit without two of the ingredients being either under-roasted or over-roasted and burned. * * *"

If this be obvious, as appellant contends, it must, we think, necessarily follow that it would be obvious to one skilled in the art that the ingredients should be roasted separately.

Therefore, upon this point we agree with the Patent Office tribunals that although such separate roasting and subsequent mixing is not disclosed in the references, there was no invention in separate roasting of the ingredients because the desirability of such procedure would be obvious to one skilled in the art.

With respect to the degrees of temperature employed by appellant in his process and those shown by the references, we would observe that no degrees are stated in appellant's claims, but the requirement of claims 3, 4, 13 and 14 is, as stated in claim 3, that the ingredients shall be roasted "to a golden brown in appearance."

It is appellant's contention that none of the references disclose roasting temperatures which will achieve this result. We find in the record certain affidavits made by appellant showing tests made by him of the process disclosed by the reference Lai where the temperature of 200° F. suggested by the patentee did not roast either sesame seed or corn to a golden brown.

However it will be noted that the Lai patent teaches that sesame seed should be "cooked" and it is stated that a temperature of 200° F. "is satisfactory." Upon this point the examiner in his action rejecting the claims stated: "The samples submitted and the affidavits and argument presented therewith have been carefully considered. In so far as the roasting of the sesame seed is concerned, the samples showed that applicant's seed was a golden grown, whereas the seed cooked at the temperatures shown by Lai was almost unchanged in color. The deepening in color is only the obvious and expected result of cooking at a higher temperature. It is held that applicant's sesame seed differs in degree and not in kind from that treated by Lai and is unpatentable thereover."

We agree with this statement, and would further observe that in one of appellant's affidavits the test made by him of cooking sesame seed at 200° F. showed not only that the seeds were not browned by the cooking, but that they had "an uncooked taste." It would seem obvious that if the seeds heated to a temperature of 200° F. had an uncooked taste, either a higher temperature should be applied or the cooking should be prolonged. It should be noted that none of the claims provide for any period of time of cooking.

With respect to the temperature applied in the roasting of cereals the patent to Waitt suggests 280° to 300° F. We find nothing in the record indicating that such temperature applied to cereals for a sufficient period of time would not result in giving to such cereals a "golden brown" appearance.

With respect to the proportions of sesame seed and cereal grain employed by appellant, claims 2 and 4 call for not exceeding one part of sesame seed to four parts of cereal grains, and claim 14 calls for one part of sesame seed to four or more parts of cereal grains. The patent to Lai discloses the combining of sesame flour produced by his process with wheat and other flours in the proportion of 150 pounds of sesame flour to about 1,000 pounds of ordinary flour, or in the proportion of one part of sesame flour to about six and one-half parts of ordinary flour, which clearly falls within the proportions called for by said claims.

To conclude, we find, in view of the references, that no invention is involved in the separate roasting of the ingredients employed by appellant, or in the temperature applied thereto, or in the proportions claimed by him, and that the combination of these steps did not involve the exercise of the inventive faculty.

In view of the foregoing we must also conclude that there is no invention involved in the product recited in claims 13 and 14.

For the reasons stated herein the decision of the Board of Appeals is affirmed.

Affirmed.